## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**EDWARD DANDRIDGE, ET AL.**                                    **CIVIL ACTION**

**VERSUS**

**KAREN G. ST. GERMAIN,**                                    **NO. 19-00529-BAJ-SDJ**
*Individually And In Her Official*
*Capacity As Commissioner Of The*
*Office Of Motor Vehicles*

### RULING AND ORDER

Before the Court is Plaintiffs' **Motion For Partial Summary Judgment As To Liability (Doc. 23)**. Defendant opposes Plaintiffs' Motion. (Doc. 34). For the reasons stated herein, Plaintiffs' Motion will be denied. Further, based on the summary judgment evidence, it now appears likely that Plaintiffs' procedural due process claims fail as a matter of law. Accordingly, the Court will also order Plaintiffs to show cause, if any exists, why summary judgment should not be entered in *Defendant's* favor, dismissing Plaintiffs' action with prejudice.

## I. SUMMARY JUDGMENT EVIDENCE

To recall, this case questions whether the Louisiana Office of Motor Vehicles' ("OMV") failure to renew Plaintiffs' operating licenses without a hearing violates Plaintiffs' right to procedural due process.

Plaintiff Edward Dandridge owns and operates Plaintiff Delta Safety Driving School, LLC ("Delta"). For eight years prior to November 2018, the OMV issued Delta site-specific operating licenses allowing Delta to operate driver instruction schools and testing facilities in four different parishes. During this time, Delta's revenues

were Dandridge's primary source of income.

OMV periodically renewed Delta's licenses pursuant to the terms of a standard contract styled "Third Party Tester for Class 'D' and 'E' Driver's License Contract" (the "Contract"). Each of these Contracts provided a two-year term, and set forth various rights and obligations among Delta and the OMV. (*See, e.g.*, Doc. 23-15 at 1-8). Notably, the Contracts specifically address the OMV's right to unilaterally "withdraw from and discontinue" the Contracts upon expiration, stating (in relevant part):

> 23. **This Agreement shall be in force for the period of time specified in paragraph one of this agreement.** The Third Party Tester and Examiner(s) shall make annual application for renewal of certification/status and the continuation of this Agreement on forms to be provided by the Department. **The Department reserves to itself, and Third Party Tester, Examiner, and agents thereof hereby agrees thereto, the right to withdraw from and discontinue this agreement upon its expiration. The Office of Motor Vehicles or Third-Party Tester may terminate the Agreement at any time by giving thirty (30) days written notice to the Office of Motor Vehicles.** The Third Party Tester agrees to return a count of unused Road Skills Test numbers previously assigned and the Certificate template in its possession upon written notice by the Department of its intent to discontinue this Agreement, and to not renew same.

(*See, e.g.*, Doc. 23-15 at 5 (emphasis added)). Additionally, the Contracts contain an integration clause, stating that they "shall not be modified except by subsequent agreement in writing and attached hereto as an addendum, duly signed by all parties." (*See, e.g., id.* at 7).

Delta and the OMV executed the most recent round of Contracts—five total—in September and October 2016 (the "2016 Contracts"). (*See* Doc. 23-15 at 1-8, 9-16, 17-24, 25-32, 53-60). The 2016 Contracts provided a two-year term "beginning on the

2

1st day of January 2017 and ending on the 31st day of December 2018." (*See* Doc. 23-15 at 1, 9, 17, 25, 53). Each 2016 Contract contains the same withdrawal provision cited above. (*See* Doc. 23-15 at 5, 13, 21, 29, 57). Each 2016 Contract also contains the same integration clause cited above. (*See* Doc. 23-15 at 7, 15, 46, 31, 46).

On November 30, 2018, the OMV notified Plaintiffs by certified mail that it would not be renewing Delta's operating licenses for the 2019-2020 years (the "November 30 Letter"), stating that the OMV "determined that it is not in the best interest to offer an invitation to renew your driving school license[s]." (Doc. 23-4 at 1). The November 30 Letter provided Plaintiffs until December 31, 2018 to wind down their operations at each of their five locations, and further advised that "[s]ince the [OMV] chooses not to renew the Third Party Tester Agreement or licenses for Delta Safety Driving Academy LLC, the school is ineligible to operate and conduct driver education training pursuant to La. R.S. 32:402." (*Id.*). The November 30 Letter invited Plaintiffs to contact the OMV's "Training and Certification Unit" with any "questions," but did not provide Plaintiffs the opportunity for a hearing prior to expiration of Plaintiffs' licenses. (*Id.* at 2). Defendant Karen St. Germain signed the letter in her capacity as Commissioner of the OMV. (*Id.*).

Plaintiffs' licenses expired on December 31, 2018, effectively ending Delta's business. Plaintiffs sought clarification of the OMV's non-renewal decision, and the OMV responded with a letter dated February 25, 2019 (the "February 25 Letter"). The February 25 Letter explained that "previous compliance reviews are used by the [OMV] to determine eligibility for renewal of Private Driving Schools and Instructors,

in accordance with the Louisiana Administrative Code, Title 55," and that "[b]ased on these compliance reviews dated February 7, 2017, December 6, 2017 and August 29, 2018, along with repeated violations of Title 55, the [OMV] determined not to offer an invitation to renew the driving school license or Third party Tester Agreement for any of the locations of Delta Safety Driving School." (Doc. 23-10 at 1). Commissioner St. Germain also signed the February 25 letter. (*Id.*).

After receiving the February 25 Letter, Plaintiffs requested a post-expiration hearing before the OMV, and were denied. Plaintiffs sought administrative review of the OMV's non-renewal decision before the Louisiana Division of Administrative Law. The Administrative Law Judge ultimately dismissed Plaintiff's request, determining that under Louisiana law "no administrative hearing shall be granted in connection with the denial of an application for a new [sic] or renewal application to be certified as a third-party tester or third party examiner." (Doc. 23-11 at 6).

## II. PROCEDURAL HISTORY

On August 14, 2019, Plaintiffs initiated this action, alleging that the OMV's non-renewal decision and failure to provide a pre- or post-decision hearing deprived them of procedural due process under the U.S. Constitution and the Louisiana Constitution. (Doc. 1 at ¶¶ 16-21). Plaintiffs asserted claims against Commissioner St. Germain in her official capacity as head of the OMV, and her personal capacity. (*Id.* at ¶ 5). Plaintiffs' official capacity claims seek a declaration that the OMV acted unlawfully and an injunction reinstating their operating licenses. (*Id.* at pp. 6-7). Plaintiffs' personal capacity claims seek compensatory damages. (*Id.* at p. 7).

On October 3, 2019, the Commissioner filed her Motion to Dismiss, contending

4

that Plaintiffs have failed to allege viable federal constitutional claims, and the Eleventh Amendment bars Plaintiffs' state law claims. (*See* Doc. 16-1).

On October 15, 2020, the Court issued its ruling and order granting the Commissioner's motion to dismiss in part. The Court dismissed Plaintiffs' state law claims, determining that they were barred by Eleventh Amendment sovereign immunity. (Doc. 31 at 3-4). Still, however, the Court allowed Plaintiffs' federal claims to proceed, determining that the Complaint alleged plausible violations of procedural due process against the Commissioner in her official *and* personal capacities. (*Id.* at 5-8). The Court's October 15 ruling was based solely on the allegations of the Complaint. In other words, the Court had not reviewed the 2016 Contracts prior to issuing its ruling.

Now Plaintiffs seek partial summary judgment on their remaining federal claims, contending that indisputably their rights to pre- and post-deprivation due process were denied when the OMV issued its non-renewal decision without notice or a hearing. (Doc. 23 at 6-11). In the alternative, Plaintiffs argue that even if the OMV "complied with applicable regulations and statutes" when rendering its non-renewal decision, "the statutes and/or regulations [themselves] are unconstitutional, as violative of due process, as applied in this particular case." (*Id.* at 11-12).

## III.    LAW AND ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that the court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). If the movant bears its burden of showing that there is no genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

Conversely, when it is apparent from the summary judgment evidence that the moving party *cannot* prevail on its claim, the Court may enter summary judgment *sua sponte* "provided the losing party has been given adequate notice and opportunity to respond.*" Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 79 n.5 (5th Cir. 1992) (quoting *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 444 (5th Cir. 1991)).

**B. Applicable Law**

"The most familiar office of [the Due Process] Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). Every procedural due process claim begins with a determination regarding "whether the interest alleged to have been infringed amounts to 'life, liberty, or property' under the fourteenth amendment." *Burris v. Willis Indep. Sch. Dist., Inc.*, 713 F.2d 1087, 1090 (5th Cir. 1983). A procedural due process claim fails absent a constitutionally protected interest. *See id.*

When, as here, a plaintiff alleges deprivation of a property interest, state law determines whether the interest is protected. *See Cleveland Bd. of Educ. v.*

6

*Loudermill*, 470 U.S. 532, 538 (1985) ("Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (quotation marks and alterations omitted)). Under Louisiana law, a plaintiff lacks a continuing property interest in a right that is "extinguished by the happening of a condition to which it has always been subject." *Baton Rouge Rice Mill v. Fairbanks, Morse & Co.*, 114 So. 633, 634 (La. 1927) ("When a right is extinguished by the happening of a condition to which it has always been subject, it cannot be said that the owner of the right has been deprived of it without due process of law."); *see Tate v. Livingston Par. Sch. Bd.*, 1983-0297 (La. App. 4 Cir. 12/22/83), 444 So. 2d 219, 221 (holding that high school basketball coach lacked a continuing property interest in an expired coaching contract), *writ denied*, 446 So. 2d 314 (La. 1984); *cf. Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2011-2067 (La. App. 1 Cir. 6/22/12), 97 So. 3d 440, 449 (holding that immediate termination of charter school's operating license did not violate procedural due process where termination occurred pursuant to the terms of the licensing contract).

### C. Discussion

Plaintiffs' due process claims are predicated on an ongoing property interest in their operating licenses. Certainly, Plaintiffs enjoyed such an interest during the term of the 2016 Contracts. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (explaining that once a state license is issued, its "continued possession may become essential in the pursuit of a livelihood," and therefore "licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment"). Here,

7

however, each of the 2016 Contracts expressly reserved the OMV's right to "withdraw from and discontinue this agreement upon its expiration." (Doc. 23-15 at 5). In other words, when Plaintiffs entered the 2016 Contracts, they expressly assumed the risk that their property interest in their licenses would be *extinguished* at the expiration of the term *if* the OMV decided not to renew. That is exactly what occurred.

Louisiana law is clear that "[w]hen a right is extinguished by the happening of a condition to which it has always been subject, it cannot be said that the owner of the right has been deprived of it without due process of law." *Baton Rouge Rice Mill.*, 114 So. at 634. Thus, it appears Plaintiffs' due process claims fail at gate because Plaintiffs' operating licenses were issued pursuant to Contracts that expired of their own terms, thereby extinguishing Plaintiffs' protected property interest in their licenses. *Id.*; *see, e.g.*, *Tate*, 444 So. 2d at 221; *Pelican Educ. Found.*, 97 So. 3d at 449; *see also, e.g.*, *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972) (holding that untenured university professor employed under a fixed term contract lacked a continuing property interest in his employment after the contract expired); *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 520 (5th Cir. 1998) (holding that plaintiff lacked continuing property interest in expired bail bondsman's license: "The fact that Burns previously held a property license (which had expired some two years earlier) is insufficient to create a property interest entitled to due process protection in March 1995."); *Anderton v. Texas Parks & Wildlife Dep't*, No. 13-cv-01641, 2014 WL 11281086, at *8 (N.D. Tex. Feb. 14, 2014) (plaintiffs lacked continuing property interest in expired hunting licenses: "[Plaintiffs] argue, in part, that they had a

8

property right in the renewal of their expired permit because the [Parks Department] had previously renewed their permit for the past ten years. But past renewals are insufficient to establish more than a unilateral expectation." (citing authorities)). And because Plaintiffs' property interest in their operating licenses was extinguished, they were not entitled to a due process hearing prior to *or* after nonrenewal. *See Burris*, 713 F.2d at 1091 ("Burris did not have a property right in the renewal of his contract. Lacking such a right, Burris was not entitled to a due process hearing.").

In sum, under the express terms of the 2016 Contracts, Plaintiffs likely cannot show a protected property interest in their expired operating licenses, and thus cannot prevail at summary judgment on any of their due process claims—including their as-applied challenge to the statutes and regulations governing the OMV's licensing and renewal procedures. *See Burris*, 713 F.2d at 1090; *Sahara Health Care, Inc. v. Azar*, 349 F. Supp. 3d 555, 572 (S.D. Tex. 2018) ("A due process claim fails when there is no property interest." (discussing cases), *aff'd*, 975 F.3d 523 (5th Cir. 2020).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 23) is **DENIED**.

**IT IS FURTHER ORDERED** that consistent with the Court's initial determination that Plaintiffs likely cannot prove a protected interest in their expired operating licenses under the express terms of the 2016 Contracts, Plaintiffs shall show cause, if any exists, why summary judgment should not be entered in

*Defendant's* favor, dismissing Plaintiffs' action with prejudice. *See Scott*, 961 F.2d at 79 n.5. Plaintiffs' show cause memorandum, if any, shall be limited to 10 pages, and shall be submitted within 21 days of the date of this Order. Plaintiffs' failure to timely submit a show cause memorandum may result in *sua sponte* dismissal of this action.

**IT IS FURTHER ORDERED** that Defendant may submit a response to Plaintiffs' show cause memorandum, also limited to 10 pages, within the time limits provided by Local Rule 7(f). No reply memoranda will be allowed.

Baton Rouge, Louisiana, this 31st day of March, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**